Nichols & Shepard Company v. John W. Trower, Alice Trower, Jane Healy and The Enid and Tonkawa Railway Company.

(Filed September 3, 1904.)

MORTGAGES—Replevin—Foreclosure—Res Judicata. Certain notes given for the purchase price of machinery were secured by a chattel mortgage, and also by a real estate mortgage. Before the notes became due plaintiff elected and declared that he deemed himself insecure, and demanded possession of the chattel security, which being refused, he brought replevin action to recover the same, and by force of the writ of replevin received the property, which was never returned to the defendant. Upon trial of the replevin action, the debt of defendant to plaintiff, pendente lite, became due, and the court instructed the jury that if they found for the defendant and a return of the property could not be had, a verdict should be returned finding the value of the property, less the amount of defendant's debt to plaintiff. A general verdict was returned in favor of defendant for possession of the property, and in case a return could not be had fixing the value of the property at $906.00. The property having been disposed of, the plaintiff paid the value as fixed by the jury, upon the judgment therefor, and brought this action to foreclose the real estate mortgage. Held, That this verdict and judgment in replevin, considered in connection with the instructions of the court, is res judicata as to any further attempt to enforce payment of the notes.

(Syllabus by the Court.)

*Error from the District Court of Garfield County; before James K. Beauchamp, Trial Judge.*

*W. W. Schwinn,* for plaintiff in error.

*M. C. Garber.* and *John F. Curran,* for defendants in error.

### STATEMENT OF FACTS.

At the time hereinafter indicated the defendant was a resident of Garfield county, O. T., and on the 21st day of June, 1897, called at the office of the general agent of plaintiff in Kansas City, and there negotiated the purchase of a grain separator and certain attachments thereto, and gave in payment therefor his two promissory notes, one for the sum of $400, due on the first day of October, 1897, and one for $225, due on the first day of October, 1898. To secure the payment of these notes when they should become due, the defendant Trower executed and delivered to plaintiff a chattel mortgage upon the following property, to wit:

"One main belt, one 32 cylinder, 52 inch grain separator complete No. 8070 built by Nichols & Shepard Co., Battle Creek, Mich., with Ashley straw stacker, belts, trucks, and all fixtures and appendages with or belonging to same. Also one 10 horse Russell traction steam engine No. 7246, complete with all the fixtures; one Ashley automatic swinging stacker complete; one canvass cover 16x24 feet; all my undivided interest in 100 acres of wheat, situated on the S. E. 1-4 of sec. 26, town. 23, range 4 W."

Also a real estate mortgage on the premises where the wheat was then growing, to wit: The S. E. 1-4 of sec. 26, town. 23, range 4, Garfield county, O. T.

All of these papers, viz: The two notes, chattel mort-

gage and real estate mortgages, were executed by defendant Trower and his wife.

The machinery was shipped to and received by defendant 'Trower on or about the 12th of July, 1897.

Soon after its arrival the defendant received it and set it up in working shape, and on or about the —— day of July, commenced trying to make use of the same, when it was found that the automatic stacker did not work satisfactorily and defendant immediately notified the plaintiff of the fact, and requested that it make its warranty thereof good by putting it in working condition. This the plaintiff failed to do, but on or about the 25th day of August, 1897, sent their general collector to the defendant with a demand for immediate payment of the entire indebtedness or a surrender of all the property covered by the chattel mortgage. At this time the automatic stacker had been taken off and laid aside as useless. Neither of the notes were at that time due, and no reason was or could be assigned for the demand, except that plaintiff arbitrarily deemed itself insecure. A part of the wheat had been threshed, and sufficient of it sold to pay the threshing bill, and about $12.00 over, which had been applied upon the first mortgage as provided by the terms of the contract. The demand of the collection agent for possession of the property was by the defendant refused, and thereupon on the 26th day of August this collection agent in the name of the plaintiff Nichols & Shepard Co., commenced in the probate of Garfield county an action of replevin for the recovery of all the property mentioned and described in the chattel mortgage, and the same was taken into possession by the officer serving the writ, and by him turned over to plaintiff

in error, who, through its collection agent, immediately sold the same at private auction sale to itself, and then at once resold it to other parties.

In the said replevin action the plaintiff in its petition set out the execution and delivery of the notes and chattel mortgage by defendant Trower and wife, and alleged that by means thereof the plaintiff had a special ownership in said property, and alleged a breach of the terms of the chattel mortgage, and consequent right of plaintiff to immediate pos-- session thereof, and prayed judgment for the possession of said property, and for costs of action.

This petition was filed on the 26th day of August, 1897,. and on the 20th day of September following defendants answered, 1st by a general denial; 2nd, non-compliance by plaintiff with the laws of the Territory; 3rd, by allegation of purchase of the property, the contract and terms of said purchase, the time and manner of payments to be made as pro- . vided by the two notes and chattel mortgage and contract heretofore set out; 4th, by denial that plaintiff was ever at any time unsafe or insecure, or that its security had been impaired or depreciated in value, and averring that the plaintiff had failed to keep and perform its part of said contract,. and that in bringing this action and seizing and dispossessing defendant of his property, and in selling and converting the same to its own use, the plaintiff committed a fraud and wrong upon the rights of defendant, and that plaintiff's action was malicious, wrongful and oppressive, and further charged that by reason of the unlawful and wrongful acts of plaintiff, and the wrongful and unlawful seizure and conversion of his property, defendant had been damaged in the sum of $1,000.

To this answer plaintiff filed a general denial in reply; and thereafter on the first and second day of February, 1898, said cause came on for hearing and trial in the probate court of Garfield county, where the plaintiff had judgment, from which defendants appealed to the district court of Garfield county, and on the 15th day of February, 1901, said cause came on for trial before said court and a jury.

On the trial of this case in the district court the two notes, the chattel mortgage, and the written contract made at the same time were all introduced in evidence, and a large mass of oral testimony, covering some 300 or more pages of typewritten matter.

At the conclusion of the evidence the court instructed the jury among other things in the 13th instruction, in words following:

"13th. You are instructed that if you find from the evidence that the plaintiff in this case wrongfully took possession of the property seized under the writ of replevin herein on the 26th day of August, 1897, and if you further find from the evidence that the said property so seized was never returned to said defendant, then in that event said defendant is entitled to recover a judgment for the return of said property from said plaintiff, or if a return thereof cannot be had, then said defendant is entitled to recover such sum as from the evidence you find was the actual value of said property so seized at the time of the taking thereof by said plaintiff, less such sum as you find from the evidence was owing to said plaintiff by said defendant."

And in the 17th instruction further directed the jury as follows:

"17. If you find from the evidence that at the time of the commencement of this action the debt was not due, and

that the security had not materially depreciated in value, and that plaintiff had no reasonable grounds to deem its claim unsafe or insecure, and had no knowledge of the sale of any of the mortgaged property or of any depreciation in the value of the security, and that the action was inspired by malice or unjustifiable motives, then you should find for the defendant."

There was also submitted to the jury certain special questions to be answered by them as a part of their verdict, among which are found the following:

"Question. Did the plaintiff at the commencement of this action have any reasonable grounds for believing that its claim was unsafe or insecure?

"Answer. No.

"Question. Did the plaintiff, or its agent, act maliciously towards said defendant Trower in taking, seizing and disposing of the mortgaged property?

"Answer. Yes."

The general verdict of the jury was in the following words:

"We, the jury, duly sworn and empanelled in the above entitled action, do upon our oaths find for the defendant John W. Trower, for a return of said property described in the petition, or in case a return cannot be had, for the sum of $906.00, the value thereof, and in addition thereto damages in the sum of $1,000.00."

On the 16th of March, 1901, judgment was entered upon the verdict of the jury in favor of defendant Trower and against the plaintiff Nichols & Shepard Co., for the return of said property and in case a return could not be had that he recover the value thereof in the sum of $906.00, and a further judgment for the sum of $1,000.00, his damages sustained, and the costs of the action.

It is admitted and stipulated that thereafter (at what time does not appear from the record) the plaintiff Nichols & Shepard Co., paid said judgment in full, and had the same satisfied and discharged of record.

On the 16th of April, 1902, the Nichols & Shepard Co., commenced this action by petition in the district court of Garfield county against John W. Trower, Alice Trower, Jane Healy and The Enid & Tonkawa Railway Company, defendants, in which the plaintiff seeks to foreclose the real estate mortgage given by John W. and Alice Trower on the 21st day of June, 1897, in connection with and as additional security for the payment of the two notes, one for $400 and the other for $225, representing the purchase price of the grain separator and other machinery purchased by Trower from the plaintiff at Kansas City, Mo.

The action of replevin heretofore set out was known as case No. 641 of that court, while the present foreclosure case is known as No. 1313 of said district court. The same notes of $400 and $225 respectively set out in the former case, No. 641, are again set out in this case as the evidence of indebtedness, and Jane Healy and the Enid and Tonkawa Railway Co., are made defendants solely for the purpose of barring any possible right they may have in the premises embraced in the mortgage which is sought to be foreclosed.

To the petition for foreclosure the defendant John W. Trower and Alice Trower, his wife, answer, first, by a general denial and, second, the plea of *res adjudicata,* and upon the last issue the case was wholly tried in the court below.

The plaintiff introduced the notes and mortgages and rested, and by stipulation defendant introduced the record

of the evidence, charge of the court, verdict and judgment in case No. 641.

The case was tried to the court without a jury, and thereon the court found and determined the plea of *res adjudicata* sustained, and rendered judgment for the defendants for the costs herein, and from this judgment the case comes to this court on petition in error.

Opinion of the court by

GILLETTE, J.: As will be seen by the foregoing statement of facts, there is but one question submitted for the determination of this court, viz: Does the record and judgment in case No. 641, Garfield county, show a final adjudication of such liabilities and obligations as that when so adjudicated the subject-matter of this action was therein determined?

This is an action for the foreclosure of a real estate mortgage given to secure the payment of two certain promissory notes, of the aggregate face value of $625. Case No. 641 above referred to was an action of replevin, brought by the plaintiff in this action against the defendants to recover the possession of certain personal property covered by a chattel mortgage given to secure the same notes which are here made the basis of this action to foreclose the real estate mortgage. In said case No. 641 upon final hearing therein the defendants, who are defendants in error in this case, recovered judgment for a return of the property taken in replevin, and further that in case a return could not be had judgment for the value thereof (as stated in the verdict) in the sum of $906.00.

It is clear upon this brief statement of the issues, and

the determination reached in case No. 641, that the rights of the parties to recover in this action, would not necessarily be concluded by that judgment when considered solely with reference to the verdict rendered.

It is urged by the plaintiff in error that we may look beyond the issues as framed in said case No. 641, and the verdict and judgment therein, to determine what was really decided in that case. We cannot agree with counsel in this contention.

Case No. 641 was an action in replevin, and from the issues presented it will be seen that the promissory notes involved in this case, and which are secured by the mortgage here sought to be foreclosed, are the same notes which were the evidence of indebtedness in that case, to secure the payment of which the chattel mortgage was given, which was the basis of the special ownership in personal property sought to be recovered in that action; but in replevin the limited pleadings necessary to join the issues do not always give a complete understanding of what is actually involved, further than that it is understood by them that there is specially presented the right of possession of the personal property set forth and described, and such issue is raised by a general denial, which authorizes a very wide range of evidence the scope of which could not be discovered from the pleadings, verdict and judgment.

In such cases it is necessary to look beyond the issues joined and the verdict and judgment, to determine what controverted questions had been tried and settled in such case.

In the consideraton of this case to determine the ques-

tion as to whether or not the judgment in said case No. 641 is *res judicata* of the question here presented, it besomes necessary to look beyond the pleadings, verdict and judgment in that case.

Upon the trial of this case the entire record of the proceedings and evidence in case No. 641 was offered and received in evidence, and is a part of the record now before this court, from which it appears that the plaintiff in error at the time of instituting case No. 641 recovered, through the writ of replevin therein issued, possession of the chattel property mortgaged to secure the payment of the notes, and that cause went to judgment without a return of the property to the owner, defendant in error herein.

At the time case No. 641 was commenced, the debt to secure which the chattel mortgage was given had not become due, and the plaintiff founded its right to recover under such circumstances, upon the conditions contained in the mortgage, and its right to recover by force of those conditions was made the principal contention, and touching this contention the court instructed the jury that if they found the debt was not due, and the security had not depreciated in value and that the action was inspired by malice or unjustifiable motives, they should return their verdict for the defendant.

In answer to special interrogatories submitted, the jury found that at the time of bringing the action the plaintiff had no reasonable ground for believing its demand was unsafe or insecure, and that the plaintiff acted maliciously in taking, seizing and disposing of the mortgaged property.

It further appears from the record that upon the final

trial of the case, the debt to secure which the mortgage was given had become due, and in consideration of this fact the court instructed the jury that if they found the plaintiff wrongfully took possession of the property at the time of bringing the suit, and if a return thereof could not be had, the defendant in such case was entitled to recover such sum as from the evidence they found was the actual value of the property so seized, less such sum as the jury found from the evidence was owing by defendant to the plaintiff. Under this instruction the jury found for the defendant and found the value of the property to be $906.00.

Considering the instructions of the court and the verdict together, it is manifest, beyond question, that the jury deducted from the total value of defendant's property seized by plaintiff, the amount of defendant's debt to plaintiff, and that the value of $906 was the balance due the defendant from plaintiff after satisfying the indebtedness of defendant to plaintiff, and this amount so found was afterwards fully paid and satisfied by the defendants. Upon such findings the defendant's obligation to plaintiff was fully discharged and paid. No action could be maintained to again enforce the payment of such debt, out of real property mortgaged to secure it, and from this conclusion it is impossible to escape, unless we assume that the jury totally disregarded the instructions of the court, which is unwarranted.

It is urged that the verdict and judgment thereon entered in case No. 641 do not show that defendant's indebtedness to plaintiff was deducted from the value of the property taken by the plaintiff. The answer to that is that the verdict must be held to be in accord with the instructions of the

court; and being in accord with such instructions, is a complete bar to any further action to collect that indebtedness.

The judgment of the district court must therefore be affirmed with costs.

Beauchamp, J., who presided in the court below, not sitting; all the other Justices concurring.