### LOCKHART STATE BANK v. BAKER et al.
### (No. 6717.)

(Court of Civil Appeals of Texas. Austin. March 6, 1924.)

**1. Appeal and error ⊛742(1)—Brief held not compliance with rules.**

Where propositions in brief did not refer to assignments of error upon which they were predicated and were not followed by a succinct statement from the record showing how the propositions were raised, the brief did not comply with rules.

**2. Bills and notes ⊛52—Statutory provision for discharge by writing held not to preclude discharge in other manner.**

Negotiable Instruments Act, § 122 (Vernons' Ann. Civ. St. Supp. 1922, art. 6001—122), providing for a discharge by renunciations which must be in writing, does not limit or control section 119, subd. 4 (article 6001—119), permitting discharge by any other act which will discharge a simple contract for payment of money.

**3. Principal and surety ⊛112—Offer of payment by principal inured to benefit of surety.**

An offer of payment by the principal held to inure to the benefit of the surety, in view of rule discharge of party primarily liable releases surety.

**4. Accord and satisfaction ⊛8(1)—When payment and acceptance of lesser sum than due constitutes accord and satisfaction.**

Where there is a payment and acceptance of a less amount than due but the debtor gives the creditor something additional which in law may be of benefit to him, there is sufficient consideration to support the agreement to accept the lesser sum in full payment, and the transaction constitutes an accord and satisfaction.

**5. Accord and satisfaction ⊛8(1)—Payment before maturity of lesser sum than due and acceptance of same, binding.**

Payment of a lesser amount than due before maturity and acceptance thereof in satisfaction constitutes accord and satisfaction.

**6. Accord and satisfaction ⊛8(1)—Payment by surety of amount less than due held supported by sufficient consideration to constitute accord and satisfaction.**

Where payee bank, which could not produce a note at the time to enter a credit on it, agreed that if the surety would pay makers a lesser amount than the amount designated in the note, and permit the makers to pay that amount on their obligation to the payee, a payment by the surety pursuant to that agreement held an accord and satisfaction supported by sufficient consideration.

**7. Estoppel ⊛52 — "Equitable estoppel" or "estoppel in pais" defined.**

"Equitable estoppel" or "estoppel in pais" is the effect of the voluntary act or conduct of a party whereby he is precluded from asserting rights which he could otherwise have asserted, either of property or contract, or of remedy, as against a person who has in good faith relied and acted upon such act or conduct to his injury, or who has acquired some corresponding right either of property, of contract, or of remedy.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Estoppel in Pais.]

**8. Estoppel ⊛52 — When "estoppel in pais" arises.**

An "estoppel in pais" arises where one party to a contract has done some act which the policy of the law will not permit him to gainsay or deny (citing Words and Phrases, Second Series, Estoppel in Pais).

**9. Estoppel ⊛52—"Equitable estoppel" and "legal estoppel" distinguished.**

"Estoppel in pais" is distinguished from "legal estoppel" by deed or record, which excludes evidence of the truth and the equity of the particular case, in that evidence of the truth is admitted on exactly the opposite ground of promoting the equity and justice of the case by preventing a party from asserting his rights under the general rule of technical law, when he has so conducted himself that it would be contrary to equity and good conscience for him to allege and prove the truth.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Legal Estoppel.]

**10. Estoppel ⊛78(1)—Conduct of payee bank held to estop it from asserting liability against surety on note.**

Where maker of note and surety agreed that latter's payment of debt due maker be applied to reduce note, but plaintiff bank having rediscounted note, and not having possession of same, agreed to release surety on payment to maker and application to other indebtedness of maker to bank, and surety paid maker and surrendered certain securities, and the maker used money to pay his other indebtedness to bank as agreed, bank was estopped from asserting liability of surety.

Appeal from District Court, Caldwell County; E. M. Cape, Special Judge.

Action by the Lockhart State Bank against H. W. Baker and others. From an adverse judgment as to defendant W. E. Jamar, plaintiff appeals. Affirmed.

H. W. Fielder and Tom Gambrell, both of Lockhart, for appellant.

E. B. Coopwood, of Lockhart, and Hart, Patterson & Hart, of Austin, for appellee Jamar.

---

⊛For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

### Statement.

BLAIR, J. This suit was instituted by appellant bank, seeking to recover on a note for the sum of $2,500, executed by H. W. Baker, John Carter, and W. E. Jamar, jointly, and payable to appellant.

Baker and Carter filed a formal answer, and judgment was rendered against them for the full amount of the note, against which no complaint is made on this appeal. Appellee W. E. Jamar filed an answer, alleging an accommodation maker or surety, payment, release, accord and satisfaction, and equitable estoppel. The facts pleaded by this answer will be set forth under our findings of fact, to save space. Only one issue raised by the pleadings and evidence was submitted to the jury. No other issue was requested. The issue and answer of the jury thereon are as follows:

"Did the plaintiff agree to release W. E. Jamar from liability upon the note sued upon if Jamar would make payment to his codefendants for the cotton seed which he had purchased from them and permit that sum to be applied on other indebtedness of those defendants to the plaintiff?" The jury answered: "Yes."

The court rendered judgment for appellee W. E. Jamar, to which appellant excepted and has duly perfected its appeal.

### Findings of Fact.

The jury's verdict, upon the special issue submitted to them, is sustained by the evidence.

Appellee Jamar alleged, and the proof showed, that he signed the note in suit as an accommodation maker or surety for his codefendants, Baker and Carter, which fact was known to appellant bank; that at the time he signed the note Baker and Carter delivered him securities of a greater value than the note as indemnity against loss by reason of his signature to the note; that later, before the maturity of the note, he purchased a large quantity of cotton seed from his codefendants Baker and Carter, in virtue of which he became indebted to them; and it was agreed between appellee Jamar and his codefendants, Baker and Carter, that said sum should be used in payment on the note in suit. Appellee Jamar caused appellant to be notified of this agreement, and offered to pay said sum, and requested appellant to so credit the note with the said sum; but appellant informed appellee Jamar that it had rediscounted the note to its city correspondent bank, and that the note was not in its possession, but requested appellee to pay said sum to his codefendants, who were indebted to appellant in large sums upon other obligations, and when such sum was paid to appellant by appellee's codefendants, it would be credited on either the note in suit when it came back, or upon the other obli-gations of appellee's codefendants to appellant; and, in either event, appellee would be released from liability on the note in suit. Appellee relied upon this agreement and paid the sum of $1,700 to his codefendants, and released to them the securities held by him. One of appellee's codefendants went to appellant bank and requested the note in suit, and offered to pay it, and had sufficient funds to pay the entire note at the time. Appellant bank represented to him that the note in suit was not there, but if he would pay such sum or sums upon Baker and Carter's other obligations, that appellee would be released from liability on the note in suit; and upon said representation he paid appellant bank on said day more than enough to satisfy the note in suit in full. This would not have been paid but for such agreement. Appellant bank admits that a release agreement was entered into, but contends that it was to the effect that if Baker and Carter would reduce their other indebtedness to the bank down to the sum of $2,500, then appellee Jamar was to be released from liability by reason of his signature on the note; that if Baker and Carter could not pay the note in suit when appellant again obtained possession of it, the same would be renewed without requiring appellee Jamar to sign the renewed note. Appellant contends that Baker and Carter's indebtedness to it was never reduced to $2,500. It further contends that only $2,300 was paid on the date of the above agreement by Baker and Carter. Appellee proved the payment of more than $2,500 on the above date to appellant on Baker and Carter's other indebtedness to it. No request was made by either party to submit these issues of fact to the jury or any other issue of fact save the one submitted; and we must indulge the presumption that the trial court found thereon in support of its judgment, in virtue of article 1985, Vernon's Sayles' Statutes, 1914, providing that—

"An issue not submitted and not requested by a party to the cause, shall be deemed as found by the court in such manner as to support the judgment; provided, there be evidence to sustain such a finding."

The evidence sustains the court's findings in this case on the issues not submitted to the jury.

### Opinion.

[1] Appellant presents seven propositions, asserting error because of the judgment in favor of appellee Jamar, and seeks to have it reversed and rendered in its favor. Its brief is not prepared in compliance with the new rules of briefing, in that the propositions do not refer to the assignments of error upon which they are predicated; nor are they followed by a succinct statement from the record, explaining and showing how the propositions were raised. Blakeney v. Johnson County (Tex. Civ. App.) 253 S. W. 333.

However, the record is short and presents no difficult questions; and we have considered all of the propositions, and conclude that none of them should be sustained.

The sixth and seventh propositions are the only ones which we think merit discussion in this opinion. Others of the propositions become immaterial because the issues raised by the pleadings and evidence about which they complain were not taken into consideration by the court in rendering the judgment in this case. Others are not correct as a matter of law.

[2] The seventh proposition asserts that—

"A release of a promissory note must be in writing, or the note must be delivered to the party primarily liable thereon."

This proposition is based upon article 6001—122, Vernon's Ann. Civ. St. Supp. 1922, section 122, Negotiable Instruments Act of 1919, which is as follows:

"*Renunciation of Rights by Holder.*—The holder may expressly renounce his rights against any party to the instrument, before, at or after its maturity. An absolute and unconditional renunciation of his rights against the principal debtor made at or after the maturity of the instrument discharges the instrument. But a renunciation does not affect the rights of a holder in due course without notice. A renunciation must be in writing, unless the instrument is delivered up to the person primarily liable thereon."

Appellee Jamar's proof of release was oral, as indicated in our findings of fact. He insists that his pleas of release by accord and satisfaction and by equitable estoppel take the transaction out of the operation of the rule announced in the above article of the statutes relating to formal releases whether or not based upon a consideration moving from the debtor toward the creditor; and further insists that oral proof of appellee's said defenses is controlled and authorized by article 6001—119, section 119, subd. 4, of the Negotiable Instruments Act of 1919, which provides that a negotiable instrument may be discharged, "By any other act which will discharge a simple contract for the payment of money." The question, therefore, is whether subdivision 4, § 119, Negotiable Instruments Act (article 6001—119), providing that a negotiable instrument may be discharged by any act which would discharge a simple contract for the payment of money, is limited or controlled by article 6001—122, relating to discharge of such instrument by express renunciation, and requiring it to be in writing. Appellant's contention has been recently decided adversely to it in the case of Hall v. Wichita State Bank & Trust Co., 254 S. W. 1036, in a well-considered opinion by the Amarillo Court of Civil Appeals, and in which a writ of error was refused by the Supreme Court November 12, 1923. We quote the following from this opinion:

"From what has been said it seems apparent to us that it was the intention of the lawmakers by section 122 to deal with the formal and express release of the common law, and by the provisions of section 119, par. 4, to continue in effect other recognized methods of discharging obligations of this character. An express release is not necessary to a discharge by novation. The intention or agreement to accept the new obligation in lieu and discharge of the old may be implied."

The method of discharging the note in suit in the Hall-Bank Case, supra, was by novation; while the discharge of the note in suit in the case at bar was by accord and satisfaction, and by equitable estoppel, or estoppel in pais. These methods of discharging simple contracts were recognized by the common-law and equity courts, and we are clear in the view that it was not the intention of the Legislature to preclude these defenses by enacting article 6001—122, supra. It is evident that it was the intention of the Legislature to incorporate in this article of the statute the common-law rules as announced by the text-writers and adjudicated cases of both England and America, which declared that a contract might be released by a formal instrument for that purpose without the necessity of showing a consideration therefor; or upon payment of a less consideration than provided in the contract and a surrender to the debtor of the instrument evidencing the contract for cancellation; such was considered in law equivalent to a release in writing. See 1 C. J. 543, § 46, notes 8, 9 and 10, and cases there cited. We have not examined all the cases cited by this authority, but find those examined support the text and the rule above announced.

It is also clear to our minds that it was the intention of the Legislature, in enacting article 6001—119, and the various subdivisions, supra, to incorporate in the statutory law other methods of discharging negotiable instruments, which had theretofore been declared by the common law to discharge a simple contract. Neither of these sections relate to, limit, or control the other, but relate to and control separate and entirely distinct matters. We therefore do not sustain appellant's contention that it was the intention of the Legislature in enacting section 122, supra, to cover all character of discharge of negotiable instruments, and to preclude thereafter proof of any character of discharge by oral testimony.

[3] There is no question but that under the facts in this case appellee Jamar is discharged from liability on the note, both by accord and satisfaction, and by equitable estoppel or estoppel in pais. He established his defense of accord and satisfaction when he proved that Baker, the principal on the note, went to the appellant bank with $1,700 paid him by appellee Jamar, at the request of appellant, and with an additional

sum sufficient to pay the note in suit, and that Baker demanded said note and offered to pay it, and appellant stated that it did not have the note, but would release appellee Jamar from liability thereon, if Baker, the principal, would pay the money in hand on other indebtedness then owing by him to appellant Bank.

[4-6] In this connection, appellant's contention as asserted by its sixth proposition, that there was a failure of consideration to support appellee's plea of accord and satisfaction, in that the proof showed that he only paid $1,700, when the note was for $2,500, is not sustained. This proposition is not sustained in the first place because the facts show that Baker, the principal on the note, offered to pay the entire amount, and would have done so but for the fact that appellant could not deliver the note at that time. He then paid the sum of approximately $3,073 on other indebtedness then owing by him to appellant. This offer of payment by the principal necessarily inures to the benefit of the surety, since a discharge of the note by the party primarily liable would release the surety. In the second place, a payment of a less amount than due and acceptance of the same, where the debtor gives the creditor something additional which in the judgment of the law may be a benefit to him, there is a sufficient consideration to support the agreement to accept the lesser sum in full payment, and the transaction will constitute a valid accord and satisfaction. Payment of a lesser amount than due before maturity and acceptance thereof in satisfaction constitutes accord and satisfaction. Appellant agreed that if appellee would pay his codefendants a lesser amount than the note in suit, and permit them to pay it on their other obligations to it, it would release him, since they could not produce the note at that time and credit payment on it, or surrender the note on full payment. We see no material difference in this state of facts and in the payment of a note before due. Appellant obtained the benefit of the money before he could produce the note for payment or credit of partial payment. It also obtained the benefit of receiving the money in liquidation of the other indebtedness of appellee's codefendants, which naturally resulted in benefit to the appellant bank. This we think is sufficient new consideration in addition to the payment on the contract, in view of the holdings of all courts that the new consideration may be small, just so it is something substantial, to take this case out of the operation of the general rule that payment by a debtor and receipt by the creditor of a less sum is not a satisfaction thereof, although the creditor agrees to accept it as such, if there be no release in writing, no new consideration, and if the note is not surrendered up to the debtor for cancellation at the time. 1 C. J. 544, § 47, notes 11 and 12, and cases there cited; Baker v. Coleman County Abst. Co. (Tex. Civ. App.) 248 S. W. 413; Ferguson v. Garrett (Tex. Civ. App.) 235 S. W. 245. Also see cases cited at page 414 of Baker v. Coleman County Abst. Co., supra.

[7] Appellee Jamar also established his defense or discharge of his liability on the note in suit by his plea of equitable estoppel, or estoppel in pais. Equitable estoppel, or "estoppel in pais," is the effect of the voluntary act or conduct of a party whereby he is precluded from asserting rights which he could otherwise have asserted, either of property, of contract, or of remedy, as against a person who has in good faith relied and acted upon such act or conduct to his injury, or who has acquired some corresponding right, either of property, of contract, or of remedy.

[8] An estoppel in pais arises where one party to a contract has done some act which the policy of the law will not permit him to gainsay or deny. 2 Words and Phrases, Second Series, pp. 336, 337; 21 C. J. 1112 to 1145.

[9] This character of estoppel is distinguished from legal estoppel by deed or record, which excludes evidence of the truth and the equity of the particular case, in that evidence of the truth is admitted on exactly the opposite ground of promoting the equity and justice of the case by preventing a party from asserting his rights under the general rule of technical law, when he has so conducted himself that it would be contrary to equity and good conscience for him to allege and prove the truth.

[10] In proof of this defense appellee Jamar convinced the jury and court that he signed the note in suit as an accommodation maker or surety for Baker and Carter, who delivered him at the time securities of a greater value than the note to be held by him against any loss by reason of his signature on the note; that later, before the note matured, he became indebted to Baker and Carter in the sum of $1,700, who agreed with him that the said sum should be applied on the note sued upon; that he advised appellant of this agreement, and thereupon appellant requested him to pay said sum to Baker and Carter and permit them to pay said sum to appellant, and upon receipt of said sum by appellant, it would release appellee from all liability upon the note in suit. Appellee relied upon this agreement and paid Baker and Carter the said sum of $1,700, which together with an additional sum more than sufficient to pay the entire note was by agreement with appellant applied upon other indebtedness of Baker and Carter then owing appellant, because appellant was not in a position to then produce and deliver the note, as it had been re-

discounted by it and was in the possession of its city correspondent bank at San Antonio. Appellee further relying upon this agreement, released to Baker and Carter the securities which he held to protect himself against liability on the note. Baker and Carter later and before this suit made an assignment for the benefit of their creditors.

Applying the above definitions of equitable estoppel or estoppel in pais to the facts in this case, we are of the opinion that appellant is now estopped thereby from asserting liability against appellee by reason of his signature on the note.

The judgment of the trial court will be affirmed in all things.

Affirmed.