Yazoo Delta Mortgage Co. *v.* Harlow *et al.*[*]

(In Banc. April 2, 1928.)

[116 So. 441. No. 26844.]

*Corpus Juris-Cyc. References: Banks and Banking, 7CJ, p. 482, n. 64; Bills and Notes, 8CJ, p. 620, n. 12; Limitations of Actions, 37CJ, p. 1052, n. 37; p. 1054, n. 54; Pleading, 31Cyc, p. 72, n. 28; Release, 34Cyc, p. 1081, n. 79; Trial, 38Cyc, p. 1363, n. 81.

*Roberson, Yerger & Cook,* for appellant.

*Brewer & Brewer,* for appellees Johnson, Corley, Nichols, Mullins and Ed. Brewer.

*Maynard, Fitzgerald & Venable,* for appellees Mc-Williams and Baker.

Argued orally by *S. C. Cook,* for appellant, and *Earl Brewer,* for appellee.

PER CURIAM. The Yazoo Delta Mortgage Company sued the appellees A. J. Mosley, J. H. Johnson, Ed

Brewer, Earl Brewer, S. A. Corley, H. T. Allen, W. B. Nichols, W. P. Baker, W. G. Harlow, E. J. Mullens, Jr., R. N. McWilliams, and E. L. Anderson upon a promissory note payable to the Planters' Bank of Clarksdale, or bearer, for the sum of eleven thousand six hundred thirty-nine dollars and fifteen cents, with interest at the rate of eight per cent. per annum after date until paid, and reasonable attorney's fees for collection if not paid when due. The note was credited with various sums, but the amount due after said credits was eight thousand one hundred thirty-two dollars and four cents, and demand was made for this sum with eight per cent. interest thereon from and after August 18, 1925, and for the further sum of two thousand six hundred eighteen dollars and fifty-four cents and interest up to August 29, 1925, and for the further sum of one thousand five hundred dollars as attorney's fees.

The several defendants filed various pleas:

The defendant W. P. Baker pleaded payment and discharge; also that after the due date of the note the plaintiff entered into an agreement for a settlement of the indebtedness of the defendants A. J. Mosley, Ed Brewer, H. T. Allen, W. B. Nichols, and E. L. Anderson; also that there were several collateral notes given as security for the note sued upon, and that by the agreement between the parties each of said collateral notes was discharged and released, and the parties thereto discharged from liability to an amount equal to the amount of the note sued upon. He also pleaded that the plaintiff was not the owner of the promissory note sued upon, had no legal title thereto, and that it had so dealt with the owner of said paper as to constitute a release and discharge of this defendant. It was further pleaded that said note is an accommodation note for the benefit of the Johnson-Harlow Lumber Company, and that the makers never received any benefit from same, and that proof would be offered to show that, being an accom-

modation note, the makers thereof had been fully and finally released by the acts of the plaintiff herein.

The defendant R. N. McWilliams filed several pleas in which he alleged that the plaintiff was not the owner of the note sued upon, and that the note, after becoming due, had been fully paid, and that, at and after the due date of the note, the said plaintiff entered into an agreement for the settlement of said indebtedness with the said defendants A. J. Mosley, Ed Brewer, W. T. Allen, W. B. Nichols, and E. L. Anderson, whereby said indebtedness was discharged. This defendant further pleaded that the plaintiff was a mere collection agency without legal title to the said paper, the said paper being owned by one of the correspondent banks of the old Planters' Bank, and that the correspondent bank, owner of said paper, had so dealt with it as to release and discharge this defendant. He further pleaded that the plaintiff was not the present owner of the note sued upon; that plaintiff should not maintain this action, because, as collateral security for the note sued upon, there were attached thereto various collateral notes of E. J. Mullens, and E. J. Mullens & Sons, and others, and that, by an accord or agreement between the parties, the plaintiff herein and the correspondent bank owner of said note, the said collateral notes were discharged and released and the parties thereto discharged from liability to an amount equal to the amount of the note herein sued upon, which said release and such dealing with said collateral notes constituted a satisfaction of the note sued upon and a release of the defendants whose names are affixed thereto.

J. H. Johnson, Ed Brewer, Earl Brewer, E. J. Mullens, Jr., W. B. Nichols, and S. A. Corley pleaded to the declaration that the plaintiff should not have and maintain its action against them, because the plaintiff is not the owner of the note sued on; that the plaintiff is simply a collection agency without legal title to the paper,

said paper being owned by one of the correspondent banks of the old Planters' Bank who should be plaintiff herein; and that said correspondent bank had so dealt with it as to release and discharge these defendants. They further pleaded that said action should not be maintained because they say that, as collateral security for the said note sued upon, there were attached thereto various collateral notes of E. J. Mullens and E. J. Mullens & Sons and others; and that by accord or agreement between the said parties, said collateral notes were discharged and released, and the parties thereto discharged from liability to an amount equal to the amount of the note herein sued upon, which release and such dealing with said collateral constitutes the satisfaction of the note herein sued upon and release of the defendants whose names are affixed thereto.

The defendant W. G. Harlow pleaded that he did not undertake and promise in manner and form as alleged in the declaration; that plaintiff ought not to have or maintain its action against him because plaintiff is not the owner of the said promissory note; that heretofore, for valuable consideration, A. J. Mosley, Ed Brewer, H. T. Allen, W. B. Nichols, and E. L. Anderson, joint makers with the defendant on said alleged note, have been released and discharged from liability thereon; and that the action of the plaintiff in releasing and discharging the said joint makers of said note operated in law as a discharge of this defendant; and further pleaded that this indebtedness had been fully paid.

The defendant Earl Brewer gave notice under the general issue that he would offer proof that, in so far as he was concerned, the note had been paid and satisfied in full, and he had been fully and finally released from all liability thereon. He also filed a special plea setting up that on or about the 18th day of June, 1923, he had an agreement with plaintiff as liquidating agent of the Planters' Bank, whereby he agreed to deliver to

them seventy-five thousand dollars par value, but of the actual value of one hundred fifty thousand dollars, of the capital stock of the Tchula Co-operative Store, in accord and satisfaction of all indebtedness that was owed to the Planters' Bank of Clarksdale, Miss., or to the Yazoo Delta Mortgage Company as liquidating agent of the Planters' Bank, whether said amounts were owned as principal or by open account, or whether as maker, joint maker, surety, indorser, or guarantor; and that, at that time, Earl Brewer was indebted to said bank, and, therefore, to said Yazoo Delta Mortgage Company as liquidating agent of said bank, in large sums, aggregating more than thirty thousand dollars, and that he was joint maker of a large number of the notes with numerous persons, to-wit, on notes of Brewer and Wheatley, Brewer and Willingham, Brewer and McDougal, Earl Brewer and Dan Brewer, and Shelton and Earl Brewer, Dan Brewer and Lee Shelton, doing business as the Wildwood Planting Company, and Brewer and Simmons, and indorser on a large number of small notes of various and sundry people payable to the Planters' Bank, and then held by the Yazoo Delta Mortgage Company, as liquidating agent of the Planters' Bank, and that, by virtue of said agreement, the defendant Earl Brewer delivered to the Yazoo Delta Mortgage Company, or its agent, F. E. Gunter, the said capital stock of the Tchula Co-operative Store above described, which was to be in full accord and satisfaction of all indebtedness of every kind and description owed by the said Earl Brewer, whether by note or open account, as joint maker, principal, surety, or guarantor for any person or corporation, and was to be in full accord and satisfaction and to release absolutely the said Earl Brewer from any liability whatsoever to the Planters' Bank or the Yazoo Delta Mortgage Company, except one note for five thousand dollars owing by F. A. Wheatley, indorsed by Earl Brewer, which was to be paid in full, together

with interest, which note was on or about the 19th day of June, 1923, paid in full. Defendant pleaded that he was released and discharged from all liability to the said Planters' Bank or to said Yazoo Delta Mortgage Company as liquidating agent.

Issue was taken in short to these pleas by plaintiff. Summons was issued on the 29th day of August, 1925, for the several defendants, and the cause was tried at the February, 1927, term. On the trial of the cause it was proved for the defendants, by the plaintiff's witnesses, that no steps had been taken for the collection of the collateral notes set forth in the pleadings given with the note herein sued on, and that the said collateral notes had been barred shortly before the trial of the cause in February, 1927, but that said notes were not barred when the declaration was filed. The agreements were introduced in evidence showing the settlement and release of E. I. Anderson for valuable consideration from every kind of debt due the said bank, found upon full and adequate consideration, and a similar agreement was made on September 17, 1925, whereby A. J. Mosley was likewise released from any and all liability of whatsoever nature, character, or description, and that a similar agreement was likewise had with H. T. Allen on the 14th day of December, 1925.

Earl Brewer testified that the agreement he had with the bank by which he delivered to it seventy-five thousand dollars par value stock of the Tchula Co-operative Store, actual value one hundred fifty thousand dollars, was in full satisfaction of all debts of every character and nature owing to the Planters' Bank or Yazoo Delta Mortgage Company as liquidating agent of said bank, and his testimony to this effect was not disputed by any witness on part of the plaintiff.

It appears that the Planters' Bank prior to July 25, 1922, had become in a failing condition, and had been taken over by the banking department, and there was a

kind of satisfactory arrangement whereby appellant was to become liquidating agent, and to collect, adjust, etc., various debts owing to the Planters' Bank. This agreement, made in 1922, to which the state bank examiner was a party did not appear in the record, but a decree of the chancery court, bearing date July 25, 1922, recited that:

The "Yazoo Delta Mortgage Company, in its capacity as liquidating agent for the Planters' Bank in liquidation, shall be and is hereby fully authorized and empowered to collect funds, to execute powers of attorney, to release trust deeds, notes and vendor's liens, to accept conveyances of property in trust, and to designate a trustee to take title to property taken in the collection of debts, to execute conveyances whereby it may dispose of property of any and every character, real, personal, or mixed, which heretofore belonged to the Planters' Bank at the time said bank went into liquidation, and to convey title to all real estate which it may hereafter acquire in the conduct of its business as liquidating agent, and in the administration of the affairs of said bank when, as, and if, in the discretion of said liquidating agent, such things are necessary to be done.

"It is further ordered, adjudged, and decreed that in conveying real estate, title to which may be taken in the collection of debts or in settlement of claims, such claims shall be in the name of the Planters' Bank of Clarksdale, by the Yazoo Delta Mortgage Company, liquidating agent, and a conveyance so executed shall operate fully and completely to convey the right, title, and interest of the said Planters' Bank to the assignees or vendee named in the conveyance. Title taken in the name of a trustee shall be conveyed by the trustee.

"It is further ordered, adjudged, and decreed that the said liquidating agent be and the same is hereby authorized to effect settlement of debts owed to the Planters' Bank upon such terms as it may regard as just and

equitable, and may compromise claims and give valid acquittances therefor, and, in short, may do all things in its judgment necessary to liquidate the affairs of the Planters' Bank which might have originally been done by the said Planters' Bank, as fully and as completely as though the bank was not in liquidation.''

A subsequent agreement was entered into on December 1, 1924, by which the Planters' Bank and the creditors thereof provided for the continuance of the liquidation of the affairs of said bank, and by which certain persons were constituted a committee known as an advisory committee, and which would have advisory control of such affairs, and by which the appellant agreed to confer with and submit to the advice of such advisory committee. Said committee represented the creditors of said Planters' Bank, which creditors severally agreed that they would forbear until December 1, 1927, to make demand upon the bank for payment of their debt and interest, subject, however, to the rights reserved hereinafter in said agreement; but it was provided and agreed by the parties that:

''Nothing in this agreement contained shall in any wise impair or affect the free and unrestricted right on the part of each and every creditor to undertake the enforcement or collection of any and all collateral notes, not embraced in the 'pool' pledged by the bank to such creditor to secure any obligation of the bank owing to such creditor in accordance with the uncontrolled discretion of such creditor, which may be exercised without regard to the due date or time of maturity of the principal notes to secure payment of which the collateral may be pledged, each creditor expressly reserving and being expressly granted the right to deal with any collateral specifically pledged with that creditor in such manner as, in the judgment of the creditor, may seem best, and this right shall include the right to sell and dispose of any collateral notes, to foreclose any trust deeds, mort-

gages, or other liens, to dispose of any real estate or any equity or right in real estate, to make settlement with the maker of any pledged note or notes, to accept renewals, to take additional collateral or security and/or to release any collateral or security, and to deal with the collateral pledged to secure notes of the bank to the same extent as though said collateral had been reduced to ownership by the creditor,'' etc.

It was further provided in this last agreement that:

''The collateral constituting what is known herein as the 'pool' shall be in the custody of the trustee as hereinbefore provided, and all actions taken by the trustee in reference to handling and dealing with the trusteed collateral shall be taken upon the direction of the advisory committee. All actions at law or in equity to enforce the rights of the creditors or of the 'pool,' either for the collection or protection of any collateral pledged, may be brought and conducted in the name of the bank in liquidation by the mortgage company, or may be brought in the name of the trustee for the benefit of the 'pool' and/or in the name of any one or more of the excepted banks which may be interested in the collateral.''

This agreement was approved by the chancery court on December 12, 1924. In the first paragraph of the decree it is stated that:

''The plan of liquidation as outlined in the said creditors' agreement is hereby approved by this court.''

In paragraph 2 it is stated that: ''The state superintendent of banks is hereby authorized and empowered to sanction and approve the execution of the creditors' agreement aforesaid.''

And in the third paragraph: ''The Yazoo Delta Mortgage Company is authorized to execute the creditors' agreement aforesaid as a party thereto.''

And in the fourth paragraph: ''The Yazoo Delta Mortgage Company . . . is hereby fully and com-

pletely authorized and empowered . . . to do and perform all of those things necessary, essential, or advisable to be done in carrying into effect the purpose of the said creditors' agreement, and in conducting the liquidating of the Planters' Bank in accordance with the terms and provisions of said agreement.''

At the conclusion of the testimony, the defendants moved to be allowed to plead the statute of limitations as to the collateral notes pledged with the note sued upon, which motion was, by the court, allowed over the objection of the plaintiff. The plaintiff then sought to reopen the case, the evidence having been closed, both sides having rested, and to file a response to the statute of limitations, in which response it was alleged that they would offer evidence to prove that the plaintiff could not have, by any sort of action or otherwise, collected any part of said collateral notes referred to in said notice, at any time since the said collateral notes were pledged, if at all, as security for the note sued upon; that the makers of each and all of said collateral notes, at all times since the pledge of said notes, have been totally insolvent, and not coercible at law; that said sums have been discharged in bankruptcy proceedings; and that the defendants, and each of them were tendered the said collateral by the plaintiff, and it was stated by the plaintiff to said defendants that said collateral was valueless, and if said defendants desired said collateral, plaintiff would surrender and release same to said defendants; that one of the indorsers upon a collateral note was a nonresident of the state of Mississippi. The court refused to reopen the case and allow the notice to be filed upon the theory that the evidence had been introduced without objection and that the plaintiff had ample notice by proof introduced, of the evidence relied upon. Thereupon the defendants requested and were granted a peremptory instruction upon which a verdict was rendered and judgment entered adjudging

defendants not liable for the demand sued upon, and, from that, this appeal was prosecuted.

Further facts will be stated in dealing with the specific questions raised by this appeal.

The first question that arises for consideration is whether or not the appellant is entitled to the note sued on, and whether it is authorized to bring suit in its own name.

It is contended by the appellees that the appellant has neither the legal title, nor beneficial interest in the note, and, consequently, has no right to sue upon the. note in its own name, although the note was payable to bearer, and was in the physical possession of the appellant.

In the agreement of 1924 the following paragraph is a stipulation with reference to the mortgage company's rights, and appears to be an assignment of the right:

"The mortgage company shall and does hereby sell, transfer, and assign to the bank, without recourse upon it, the said mortgage company, its entire right, title, and interest in and to all of the aforesaid notes, and its beneficial interest in and to all real estate held as aforesaid, at and for the sum of three million three hundred thirty-four thousand one hundred ninety-three dollars and forty-one cents, to-wit, the aggregate amount of the debt, principal and interest, owed by the mortgage company as of November 15, 1924, to the several creditors. In payment therefor the bank shall as of November 15, 1924, execute its several promissory notes which shall bear date of November 15, 1924, shall be payable to the mortgage company, shall draw interest from the date thereof at the rate of five per centum per annum, and shall mature on December 1, 1927, and shall bear notation of the fact that said notes are issued in accordance with this creditors' agreement, and are subject to the terms thereof. Said notes of the bank shall be secured by the pledge of all the collateral purchased by the bank from the

mortgage company in accordance with this paragraph, which shall include all rights, interest, and claims of whatsoever nature of the mortgage company in and to all notes, equities, real estate, choses in action, and properties of every description, real, personal, or mixed, and also by the pledge of all the collateral comprising the new pool hereinafter provided for.''

Chapter 134, Laws of 1916 (section 511, Hemingway's 1927 Code), reads as follows:

''The assignee of any chose in action may sue for and recover on the same in his own name, if the assignment be in writing. In case of a transfer or an assignment of any interest in such chose in action before or after suit brought, the action may be begun, prosecuted and continued in the name of the original party, or the court may allow the person to whom the transfer or assignment of such interest has been made, upon his application therefor, to be substituted as a party plaintiff in said action. If in any case a transfer or assignment of interest in any demand or chose in action be made in writing before or after suit is filed, to an attorney or firm of attorneys, appearing in the case, it shall be sufficient notice to all parties of such assignment or transfer, if such assignment or transfer be filed with the papers in said cause, and such attorney or attorneys shall not be required to be made parties to said suit.''

The court is of the opinion that the plaintiff was entitled to bring suit in its own name, for the use and benefit of the bank and its creditors, under this statute, and under the contracts and agreements and decrees above set out and shown in the record. There is no merit in the pleas and contention that the plaintiff did not have any right of action on the note in question.

The next general question is whether or not the defendants were released from liability on the note by the course of dealing with it set forth in the pleadings and in the evidence in the case.

It appears from the evidence of the plaintiff that certain collateral notes were placed with the note involved in suit as collateral security, and that no steps had been taken by the appellant for the collection of said collateral notes, and that, at the time of the trial, the notes so' placed as collateral had become barred by the statute of limitations, so that, thereunder, a complete defense, if availed of by the makers of said notes, existed to them.

There is no proof, however, in the record to show that the makers of the note sued on here ever made any request or demand of the appellant to take such action, or to bring any suit on said notes to prevent the statute of limitations from running, and there is no proof to show that had suit been instituted at that time the notes could have been collected by suit.

Ordinarily, the holder of a collateral note is not obliged to bring suit thereon unless requested to do so by some interested party, having legal title to the notes, or the party who makes the principal note to which such collateral is attached, and the mere nonaction of a holder of a collateral note does not entitled the parties to the principal note to a release from such obligation. Furthermore, when suit was instituted in 1925, the statute of limitations had not run against said collateral notes, and there was no plea or writing suggesting specifically that this course would be taken, nor was there any effort to bring in the parties liable on the collateral notes, to secure judgment thereon in satisfaction of the debt. The defense to the note sued on must be judged by conditions and the *status* existing at the time the suit was instituted, and not by the *status* existing at the time of the trial.

The pleadings set up by the several defendants are very vague and general, and it is doubtful if they are sufficient to put the plaintiff on notice as to what defense would be available thereunder. It may be that joining issue on such pleadings rendered them sufficient as such to give notice of any defense that existed, but it did not

give notice of the statute of limitations, because this statute had not then run. So far, then, as the failure to collect the collateral notes is concerned, it was not a defense to the suit, although by proper pleadings the amount might have been used to diminish the recovery, but to have availed of these pleadings they should have been more specific.

The pleadings set up as an attempted defense to the note that certain of the makers of the note sued on had been released, and that, by agreement with the appellant and creditors of the Planters' Bank, this release had the effect of releasing all the makers of the note, as they were mere accommodation makers.

In our opinion, the note sued on is a joint and several note, subject to the provisions of sections 2323, 2324, Hemingway's 1927 Code (sections 2682, 2683, Code of 1906), known as the "Joint and Several Debtor Statutes." Therefore, the effect of the settlement with certain of the makers does not release the other makers from the entire obligation, as might be the case with the mere joint liability under which the makers would not be severally liable, but the effect of the release and settlement in the case at bar would be only to reduce the amount of recovery to the proportion which those released bear to those not so released. It is not necessary from the record before us to decide whether, if some of the makers sued were insolvent, those released by the agreements would be liable for the *pro rata* or share of such insolvent debtor, and we do not decide anything with reference to this question, but we do decide that it is not a complete release of all the makers of the note, although the parties released may have been, or they may not have been, insolvent. Consequently, the peremptory instruction given for all the defendants was erroneous as to those not released, but the peremptory instruction as to E. L. Anderson, Earl Brewer, W. T. Allen, and A. J. Mosley was correct and the judgment as

to them will be affirmed, but will be reversed as to the others.

At the conclusion of the evidence, the defendants obtained leave to amend the pleadings so as to set up the statute of limitations, and this amendment was, by the court, allowed after the testimony had been closed.

The appellant sought to show by counternotice, and offered proof, that the notes placed as collateral, and which were barred, were at no time, after the pledging of them as collateral, collectible by coercion, and that the makers thereof were insolvent or bankrupt, and that no effort would have enabled the plaintiff to have collected said money from said makers of such collateral.

We think, under the circumstances of the case, that the court below should have reopened the case and have permitted the counternotice and proof thereunder, and should have determined the result by further proceedings and deliberation.

As we have said before, the statute of limitations was not a defense to the note sued on, but could have been used as a defensive matter by showing that the pledgee, appellant here, was in default of its duty thereunder.

The judgment of the court below is therefore reversed as to all the defendants, except E. L. Anderson, Earl Brewer, W. T. Allen, and A. J. Mosley.

*Reversed in part, and affirmed in part.*